IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ADAM M. MOOMEY,                    )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )          Case No. 2:24-cv-00579-BL
                                   )
NURSE TERRY, et al.,               )
                                   )
        Defendants.                )

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

Adam M. Moomey, an inmate proceeding *pro se*, filed a Complaint under 42 U.S.C. § 1983.  (Doc. 1).  The Complaint names Nurse Terry, Nurse Zack, Nurse Meghan, and Warden Jackson[1] as defendants, all of whom were employed at the Elmore County Jail at the time of the alleged events.  (*Id*. at 1–3).  It alleges that, beginning in June of 2024, the Plaintiff injured his right shoulder during an altercation with another inmate and "medical staff refused medical attention" in violation of his Eighth Amendment rights.  (*Id*. at 3–5).  As a result, the Plaintiff seeks injunctive relief and monetary damages.  (*Id*. at 5).

---

[1] The Defendants have demonstrated that the individual the Plaintiff identifies as "Nurse Terry" is in fact named Terri Sowash, the individual the Plaintiff identifies as "Nurse Zack" is in fact named Zachary Turnbull, and the individual the Plaintiff identifies as "Nurse Meghan" is in fact named Meagan Fenn.  (*See* doc. 39-1).  The clerk of court is **DIRECTED** to update the docket accordingly, and the court will hereafter address the Defendants by their proper names.

The medical Defendants have filed a joint Motion for Summary Judgment (doc. 39) with supporting evidentiary materials, Defendant Jackson has filed a separate Motion for Summary Judgment (doc. 47), and the Plaintiff has filed a response to both motions (doc. 58).  Upon review and consideration of the parties' filings, and for the reasons explained below, the Defendants' Motions for Summary Judgment (docs. 39 & 47) will be **GRANTED** as to the Plaintiff's federal claims, and the court will **DECLINE** to exercise supplemental jurisdiction over any purported state law claims.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party."  *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting

*Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id*.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically

3

stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (citation omitted).  "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (internal quotations and citations omitted).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted).  Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury

4

could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## III.   FACTS BEFORE THE COURT[2]

As an initial matter, when considering a motion for summary judgment, the court <u>may</u> consider other materials in the record, but it <u>need</u> consider only those materials specifically cited by the parties. *See* Fed. R. Civ. P. 56(c)(3); (*see also* Doc. 49 at 1, informing the Plaintiff that the court "is not required to consider documents or parts of documents that have not been specifically cited by page number"). However, as the court previously informed the parties, "[u]nsworn statements may not be considered by a district court in evaluating a motion for summary judgment." *Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003), *as amended* (Sept. 29, 2003)). Indeed, in its Order directing the Plaintiff to respond to the Defendants' motions, the court specifically cautioned:

> Plaintiff cannot rely on unsworn pleadings but instead must oppose the motions by filing sworn affidavits, declarations, depositions, or other evidentiary materials to demonstrate that there is a genuine dispute as

---

[2] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

to a material fact for trial in this case.  Additionally, if Plaintiff fails to provide acceptable evidence under Rule 56, the Court may accept the moving party's evidence as true for purposes of the motion, grant the motion, and enter judgment in favor of the moving party without a trial. Fed. R. Civ. P. 56(e).

(Doc. 49 at 2 (footnotes omitted)).

Under this standard, the Plaintiff has failed to provide any sworn statements the court must consider in opposition to summary judgment.  First, although his signature on his Complaint is authenticated by a notary in an attached "Alabama Notary Acknowledgement" (*see* doc. 1 at 7), the document is not sworn under oath before the notary.  *See Roy*, 53 F.4th at 1347 ("At the summary judgment stage, parties may submit traditional affidavits sworn under oath before a notary (or another oath-taker) affixed with the notary seal.") (emphasis added).  This court has previously explained that a notary acknowledgement does not render a document properly sworn:

> In an acknowledgement, unlike a jurat, the signer does not swear under oath or make statements under penalty of perjury, but typically appears in person at the time of notarization to be positively identified and to declare ("acknowledge") that the signature on the document is his or her own and that it was willingly made. *See Notaries Public: The Handbook*, The Alabama Secretary of State's Handbook for Notaries Public (First Ed.), at 6 (2019).[] "For a jurat, the signer must appear in person at the time of notarization to sign the document and to speak aloud an oath or affirmation promising that the statements in the document are true." *Id*. [at 8.]

*McNeal v. Macon Cnty. Bd. of Ed.*, No. 3:19-cv-122-SRW, 2021 WL 6883429, at

*3 (M.D. Ala. May 26, 2021); *see also Tharrington v. Dir., Va Dep't of Corr.*, No.

6

3:14-cv-720, 2015 WL 4606174, at *7 n.7 (E.D. Va. July 30, 2015). Because the

Plaintiff's Complaint contains only an acknowledgement of his signature, and not a

jurat, the court may not consider any statements therein when deciding summary

judgment.[3]

Similarly, the Plaintiff's response (doc. 58) to the Defendants' motions is

neither sworn under oath nor signed under penalty of perjury and, as such, the court

may not consider any statements therein. And similarly, even if it was properly

sworn or verified, it is far too conclusory to establish a genuine issue of material

fact. *See Owens*, 812 F. App'x at 870. Indeed, the response does not cite to any

materials in the record, and it provides only the following statements in their entirety:

> In response to the claim against Warden Jackson (ECSO Jail) for negligence on a county or state level employee.

> In response to claim against Defendants nurses Meagan Fenn, Terri Sowash, and Zack Turnbull for medical negligence and medical malpractice.

---

[3] Importantly, even if the Complaint was in fact properly sworn, it fails to state any allegations specific to the four named Defendants sufficient to overcome summary judgment. It alleges only that, while incarcerated at the Elmore County Jail in June of 2024, the Plaintiff was attacked by another inmate "who broke/dislocated [his] right shoulder." (Doc. 1 at 4). The Plaintiff "[a]sked for medical to x-ray the dislocation and was refused." (*Id.*). He "requested medical attention and [kept] getting no assistance." (*Id.* at 5). On August 26, 2024, "an x-ray tech … came and did an x-ray and confirmed [that it was] completely dislocated and still no relief or attention." (*Id.*). These statements—which wholly fail to identify any of the four Defendants—are too conclusory to establish a genuine issue of material fact sufficient to preclude summary judgment. *See Owens v. Sec'y of Fla. Dep't of Corr.*, 812 F. App'x 861, 870 (11th Cir. 2020) (citing *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("[The Eleventh Circuit] has consistently held that conclusory allegations without specific supporting facts have no probative value.")).

> I Plaintiff Adam M. Moomey have exhausted all ways with grievances
> and sick calls according to the Prison Litigation Reform Act to support
> these claims.

(Doc. 58).[4]

Accordingly, under Federal Rule of Civil Procedure 56(e), the court considers the following evidence—proffered by the Defendants in affidavits signed under penalty of perjury—undisputed for purposes of summary judgment:

- From the date of the Plaintiff's arrival at the Elmore County Jail on June 9, 2024, until the date of the alleged inmate altercation on June 26, 2024, the medical Defendants regularly assessed the Plaintiff and provided treatment for a right arm wound sustained prior to his incarceration. (Doc. 39-1 at 64–67, 73–74). He was seen by Defendant Fenn on June 10, 11, 12, 13, 14, 16, 17, and 25; he was seen by Defendant Sowash on June 15, 20, 21, and 22; and he was provided multiple pain medications and wound care to his right arm. (*Id.*).

- On June 26, 2024, Defendant Sowash assessed the Plaintiff after an alleged inmate altercation. (*Id.* at 74, 375). At that time, the Plaintiff complained of "right elbow and arm pain." (*Id.*). Defendant Sowash noted that the Plaintiff had been involved in a train accident in May and that treatment was being provided for injuries he sustained in the train crash, including injuries to his right arm. (*Id.*). Defendant Sowash noted that the Plaintiff had full active range of motion and passive range of motion. (*Id.*). That same day, Defendant

---

[4] Attached to the response is a single grievance submitted by the Plaintiff on February 26, 2026—nearly 18 months after the Complaint was filed—asking when he will receive follow up appointments for his neck and shoulder. (Doc. 58-1). The following day, Lieutenant Shackelford responded:

> since you are incarcerated again in this facility all personal appointments you had prior to you being arrested are invalid. you have to go through qchc. your pending lawsuit with qchc does not affect your treatment while here. you choosing not to cooperate with the nurses is only hurting you. Once you sign the nurse's paperwork and do your intake, then the doctor can get your stuff scheduled if its needed.

(*Id.*). This filing is not sworn, is not responsive to the facts asserted in the Defendants' summary judgment motions, and does not establish wrongdoing by any of the Defendants.

Fenn ordered an x-ray of the Plaintiff's arm, and the Plaintiff was moved out of general population as a precautionary measure. (*Id*. at 67, 74, 375). That same day, the Plaintiff's right forearm was x-rayed, and the resulting radiology report indicated "no acute osseous abnormality," "status post radial/ulna fixation," and "no acute fracture or dislocation." (*Id*. at 74, 372).

- The Plaintiff continued to be assessed and treated by these Defendants on June 27, 28, and 29, as well as July 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 15, 16, 17, and 18. (*Id*. at 68, 74–76).

- On July 30, 2024, the Plaintiff submitted a sick call request with complaints of a cough, runny nose, and body aches. (*Id*. at 82, 298). That same day, Defendant Turnbull assessed the Plaintiff in response to his sick call request, provided the Plaintiff with a medication to treat cold symptoms, and encouraged the Plaintiff to return to sick call if more serious symptoms developed. (*Id*. at 82, 301).

- On August 20, 2024, the Plaintiff submitted a sick call request reporting shoulder pain resulting from an altercation with another inmate, and Defendant Turnbull responded the same day. (*Id*. at 83, 285). Defendant Turnbull advised the Plaintiff that he was on the list to see the site physician and that, because the Plaintiff was already receiving pain medication, additional pain medication could not be given at that time. (*Id*.). In response to the Plaintiff's complaints of shoulder pain, the site physician ordered an x-ray. (*Id*. at 83).

- On August 26, 2024, the Plaintiff received an x-ray of his shoulder. (*Id*. at 76, 83, 279). The resulting radiology report indicated no shoulder fracture, separation, or dislocation. (*Id*. at 76, 83, 280). It did, however, reveal mild degenerative joint disease of the right shoulder. (*Id*.).

- On August 31, 2024, Defendant Turnbull assessed the Plaintiff again. (*Id*. at 83). At that time, the Plaintiff complained that his "arm [wasn't] right when [he leaned] against the wall" and that it had been throbbing and aching for several days. (*Id*.). The Plaintiff did not appear in acute distress, and there was no visible deformity, abrasion, swelling, or tenderness on palpitation. (*Id*.). The Plaintiff continued to be prescribed acetaminophen. (*Id*. at 275).

- On November 4, 2024, a physician assessed the Plaintiff, at which time the Plaintiff reported right shoulder pain from an altercation in the jail. (*Id*. at 77). The physician noted that the Plaintiff had suffered a severe injury prior to his incarceration, which resulted in him having little to no use of his right shoulder/arm. (*Id*.). The physician examined the Plaintiff's shoulder and noted that, while there was no swelling or obvious deformity present, the Plaintiff did have a large area involving the acromioclavicular joint. (*Id*.). Thus, the physician referred the Plaintiff to an orthopedic surgeon for evaluation and recommendation. (*Id*.).

- On November 13, 2024, the Plaintiff was referred to Southern Orthopaedic Surgeons with a chief complaint of right shoulder pain. (*Id*.). Based on Defendant Sowash's review of the resulting medical records, the Plaintiff was then referred to the UAB Brachial Plexus Clinic. (*Id*. at 78).

- On February 20, 2025, the Plaintiff was seen at UAB Highlands Orthopedic Clinic for a preoperative appointment for a right brachial plexus injury. (*Id*.). On March 10, 2025, the Plaintiff received surgery for his right brachial plexus injury. (*Id*.). On March 20, 2025, the Plaintiff attended a postoperative follow up appointment. (*Id*.).

- The Plaintiff was not denied access to medical evaluation or treatment at any time, and his medical needs were treated timely and appropriately. (Doc. 27-1; Doc. 39-1 at 64, 69, 73, 78, 82, 84, 487–490). His requests for evaluation were never ignored, and his treatment was never delayed. (*Id*.). None of the Defendants disregarded a risk of serious harm to the Plaintiff, and the treatment provided to the Plaintiff exceeded the standard of care. (Doc. 39-1 at 69, 78–79, 84, 487–490).

## IV.   DISCUSSION

### a.   Federal Deliberate Indifference Claims

The undisputed evidence fails to demonstrate that any of the named

Defendants acted with deliberate indifference in violation of the Plaintiff's

constitutional rights.[5]   To establish deliberate indifference, a plaintiff must demonstrate in part "that the defendant acted with 'subjective recklessness as used in the criminal law,' … and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024).[6]  "When the need for treatment is obvious, medical care that is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Simpson v. Holder*, 200 F. App'x 836, 839 (11th Cir. 2006) (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)).  However, a "simple difference in medical opinion" does not constitute deliberate indifference.  *Simpson*, 200 F. App'x at 839 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

The Plaintiff has proffered no evidence demonstrating that any Defendant was

---

[5] In his Complaint, the Plaintiff claims that his Eighth Amendment rights were violated by the Defendants.  (Doc. 1 at 3).  However, assuming the Plaintiff was a pretrial detainee at the time of the alleged events rather than a convicted prisoner, a medical deliberate indifference claim arises under the Fourteenth Amendment rather than the Eighth Amendment.  Regardless, the distinction is irrelevant here because the standard under both Amendments is the same.  *See, e.g., Scott v. Miami Dade Cnty.*, 657 F. App'x 877, 881 n.4 (11th Cir. 2016) ("Where, as here, the plaintiff is a pretrial detainee …, the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment's prohibition against cruel and unusual punishment, governs our analysis.[]  Because the standard is the same in both contexts, we apply decisional law involving Eighth Amendment deliberate indifference claims.") (citations omitted).

[6] "[C]ivil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is *either known or so obvious that it should be known*."  *Wade*, 106 F.4th at 1256 (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).  By contrast, "criminal law … generally permits a finding of recklessness only when a person disregards a risk of harm *of which he is aware*."  *Id*. (citing *Farmer*, 511 U.S. at 836–37).

11

subjectively aware that his or her conduct would result in a risk of serious harm to the Plaintiff. To the contrary, the undisputed evidence makes clear that the medical Defendants frequently assessed and treated the Plaintiff, prescribed him various pain medications, responded promptly to his sick call requests, and referred him to the on-site physician and off-site specialists for evaluation and treatment of his right arm and shoulder.

On assessment, it was noted that the Plaintiff was not in distress, and his shoulder exhibited no visible deformity, abrasion, swelling, or tenderness on palpitation. Upon receiving an x-ray of his shoulder, he was found to have no shoulder fracture, separation, or dislocation. Nevertheless, upon noting an abnormality involving the Plaintiff's acromioclavicular joint, he was sent to multiple outside specialists for further evaluation until ultimately receiving surgery for a brachial plexus injury. At no time does it appear that the Defendants disregarded a serious risk of harm to the Plaintiff of which they were subjectively aware; rather, it is undisputed that they did <u>not</u> disregard any such risk and that they treated the Plaintiff timely and appropriately.

To the extent the Plaintiff believes that the Defendants should have taken alternative or additional action—such as an x-ray—earlier than they did, the Supreme Court has explained:

> [T]he question whether an X-ray or additional diagnostic techniques or
> forms of treatment is indicated is a classic example of a matter for

medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice[.]

*Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *see also Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although [the plaintiff] may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference.").[7] Indeed, even if the Defendants did in fact incorrectly diagnose or treat the Plaintiff, it is well-settled that accidental inadequacy, negligence in diagnosis or treatment, and medical malpractice are insufficient to establish a constitutional violation. *See Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citing *Estelle*, 429 U.S. at 105–06).

Furthermore, because the Plaintiff has failed to establish a genuine issue of material fact as to a deliberate indifference claim against the medical Defendants, any related claim against Defendant Jackson must also fail. Indeed, it is well-established that "[t]here can be no policy-based liability or supervisory liability when there is no underlying constitutional violation." *Knight through Kerr v.*

---

[7] *See also Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020):

With respect to prisoners' medical care … we have held that the Eighth Amendment doesn't require it to be "perfect, the best obtainable, or even very good." [*Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991)] (quotation omitted). Rather, we have emphasized, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. at 1505 (quotation omitted).

*Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.")).

Accordingly, the Defendants are entitled to summary judgment on the Plaintiff's federal deliberate indifference claims.

**b.      State Law Negligence or Medical Malpractice Claims**

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a common nucleus of operative fact." *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984) (internal quotations omitted).  "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims."  *Id*. at 428 (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, … the state claims should be dismissed as well.")).

Accordingly, because the Defendants will be granted summary judgment on the Plaintiff's federal deliberate indifference claims, the court declines to exercise supplemental jurisdiction over any purported state law claims.  *See, e.g.,* 28 U.S.C.

14

§ 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction."); *Arnold v. Tuskegee Univ.*, 212 F. App'x 803, 811 (11th Cir. 2006) ("When the district court has dismissed all federal claims from a case, there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims.") (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should be the final arbiters of state law.").

## V. CONCLUSION

Accordingly, based on the foregoing, it is **ORDERED** that:

1. The Defendants' Motions for Summary Judgment (docs. 39 & 47) are **GRANTED** as to the Plaintiff's federal claims, and such claims are **DISMISSED** with prejudice.

2. The court **DECLINES** to exercise supplemental jurisdiction over the Plaintiff's purported state law claims, and such claims are **DISMISSED** without prejudice.

Final Judgment will be entered separately.

**DONE** and **ORDERED** this the 2nd day of July, 2026.

BILL LEWIS
UNITED STATES DISTRICT JUDGE